UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN DAVID KARWAT, II,                    Case No. 11-12452

           Plaintiff,                    Stephen J. Murphy, III
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

           Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 13, 16)

## I.  PROCEDURAL HISTORY

    A.  Proceedings in this Court

On June 6, 2011, plaintiff filed the instant suit seeking judicial review of the

Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to

28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Stephen J.

Murphy, III referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits. (Dkt. 3). This

matter is before the Court on cross-motions for summary judgment. (Dkt. 13, 16).

    After conducting an initial review of the record in this matter, it was

apparent that part of the administrative record was missing. Thus, on September

15, 2012, the Court granted plaintiff's request to supplement the record, contained in a footnote in his summary judgment brief. (Dkt. 17). In addition, the Court asked the parties to file supplemental briefs on the following issues: whether the updated medical source statement completed by Dr. Nagarkar and dated July 19, 2010 was submitted to the Appeals Council; whether the Appeals Council reviewed the updated medical source statement completed by Dr. Nagarkar; and whether remand under sentence six or some other relief would be appropriate in light of the answers to the first two questions and all of the evidence submitted to the Appeals Council. (Dkt. 17, Pg ID 794-795). The parties filed their supplemental briefs as ordered on October 17, 2012. (Dkt. 22, 23). Plaintiff also filed a reply to the Commissioner's supplemental brief. (Dkt. 25). The Commissioner, with permission, filed a corrected affidavit in support of the supplemental brief. (Dkt. 26).

     B.    <u>Administrative Proceedings</u>

Plaintiff filed the instant claims on December 11, 2007, alleging that he became unable to work on January 4, 2007. (Dkt. 9-5, Pg ID 134-139). The claim was initially disapproved by the Commissioner on February 8, 2008. (Dkt. 9-4, Pg ID 90-97). Plaintiff requested a hearing and on January 11, 2010, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Priscilla M. Rae, who considered the case *de novo*. In a decision dated February 22, 2010, the ALJ

found that plaintiff was not disabled.  (Dkt. 9-2, Pg ID 42-52).  Plaintiff requested

a review of this decision on March 6, 2010.  (Dkt. 9-2, Pg ID 40-41).  The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits[1] (Dkt. 9-2, Pg ID 31), the Appeals Council, on April 8, 2011,

denied plaintiff's request for review.  (Dkt. 9-2, Pg ID 28-30); *Wilson v. Comm'r*

*of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

This matter is now ready for report and recommendation.  For the reasons set

forth below, the undersigned **RECOMMENDS** that plaintiff's motion for

summary judgment be **GRANTED**, that the Commissioner's motion for summary

judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**,

and that this matter be **REMANDED** for further proceedings under sentence four.

## II.     FACTUAL BACKGROUND

### A.     ALJ Findings

Plaintiff was 44 years of age at the time of the most recent administrative

hearing.  (Dkt. 9-2, Pg ID 71).  Plaintiff's relevant work history included

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

approximately 17 years as a graphic artist.  (Dkt. 9-6, Pg ID 180).  In denying

plaintiff's claims, defendant Commissioner considered bipolar disorder, obsessive

compulsive disorder, depression, manic mood swings, irritability, and lack of focus

as possible bases of disability.  (Dkt. 9-6, Pg ID 178).

    The ALJ applied the five-step disability analysis to plaintiff's claim and

found at step one that plaintiff had not engaged in substantial gainful activity since

January 4, 2007.  (Dkt. 9-2, Pg ID 47).  At step two, the ALJ found that plaintiff's

obsessive-compulsive disorder and bipolar disorder were  "severe" within the

meaning of the second sequential step.  *Id*.  At step three, the ALJ found no

evidence that plaintiff's combination of impairments met or equaled one of the

listings in the regulations.  *Id*.  At step four, the ALJ found that plaintiff could not

perform his previous work as a graphic artist.  (Dkt. 9-2, Pg ID 50).  At step five,

the ALJ denied plaintiff benefits because plaintiff could perform a significant

number of jobs available in the national economy.  (Dkt. 9-2, Pg ID 51).

    B.    Plaintiff's Claims of Error

    Plaintiff asserts that the ALJ's decision is not supported by substantial

evidence because the ALJ failed to obtain a psychological evaluation of plaintiff

and instead, relied on the "specious" opinions of the non-examining consulting

physician, Dr. Robert Newhouse.  Plaintiff also contends that the ALJ erred in not

giving plaintiff's treating psychiatrist, Dr. Nagarkar's, opinions controlling weight

and failing to give sufficiently good reasons for rejecting his opinions.  Plaintiff next argues that the ALJ's credibility analysis was flawed and there was no basis in the records for rejecting plaintiff's claimed limitations, which are supported by his treating physician's records.  And, plaintiff contends that the ALJ merely discounted plaintiff's credibility in a "blanket manner," without any analysis of which portions of plaintiff's testimony she accepted and which she rejected.

Plaintiff also asserts that the ALJ erred in finding that plaintiff's bipolar disorder did not meet or equal the criteria of Listing 12.04.  According to plaintiff, the ALJ did not dispute that plaintiff's disorder met the criteria of the requirements of 12.04A, but rather, she erroneously concluded that plaintiff failed to meet two of the four "B" criteria.  Plaintiff argues that the ALJ confused plaintiff's physical ability to perform activities of daily living with his capacity to living appropriately and independently of others.  Plaintiff contends that while he has the physical ability to perform many of the tasks of daily living, he lacks the psychological capacity to do so.   Plaintiff also points out that the ALJ's decision is contrary to the findings of Dr. Nagarkar and his therapist, who concluded that his abilities to maintain social functioning and concentration, persistence, or pace were markedly limited.

In the supplemental brief, plaintiff also requests remand under sentence six, asserting that new, material evidence was submitted to the Appeals Council,

requiring such a remand.  The evidence includes a narrative report from plaintiff's treating psychiatrist, additional treatment records from plaintiff's therapist, and statements from plaintiff and his wife regarding why the ALJ's decision is erroneous.

C.     The Commissioner's Motion for Summary Judgment

The Commissioner first points out that it was plaintiff's burden to prove that he was disabled by his medically determinable impairments for at least 12 continuous months, and Dr. Nagarkar's opinion was rendered at a time when plaintiff was not working at his business and had retired on a farm with his new wife; but, Dr. Nagarkar did not identify any discrete period of disability.  The Commissioner also objects to plaintiff's pejorative characterization of Dr. Newhouse's opinion.

And, to the extent that plaintiff is arguing that the ALJ was required to obtain a consultative examination, and could not rely on Dr. Newhouse's opinion, the Commissioner contends that plaintiff is mistaken.  The ALJ, as the finder of fact, is responsible for deciding plaintiff's residual functional capacity and for deciding whether a listing is met or equaled.  SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. Jul. 2, 1996).  The Commissioner acknowledged that, in particular cases, the ALJ's duty to develop the record may require the ALJ to arrange for a consultative examination.  20 C.F.R. § 404.1519.  The requirement arises in two

2:11-cv-12452-SJM-MJH   Doc # 27   Filed 08/16/13   Pg 7 of 27   Pg ID 958

situations: (1) when in the ALJ's opinion, the evidence, though consistent, taken as a whole, is insufficient, or, (2) if after weighing the evidence, the ALJ cannot reach a conclusion about the issue of disability. 20 C.F.R. § 404.1527(c)(3). According to the Commissioner, neither of these situations is present in this case.

Moreover, the Commissioner maintains that the ALJ did not summarily reject the opinions of Dr. Nagarkar and therapist Mersy, but compared the conclusions with plaintiff's underlying progress notes. (Tr. 21-22). As the ALJ noted, plaintiff reported feeling depressed and "up and down" in July 2007, having just gone to court for his on-going divorce. (Tr. 22). A few months later he reported that he was "happy with where he is at." (Tr. 22, citing Exhibit IF). In August 2007, plaintiff's son was working with him and he was involved in other businesses. (Tr. 22). His fiancé, Darby, was helping him with his business when he was going through his stressful divorce issues. (Tr. 22, citing Exhibit 3F). In February 2008, plaintiff had some anxiety, but was going through a divorce and he was still working five to eight hours a week. (Tr. 22). The ALJ observed that during February through May 2008, plaintiff only reported one episode of anxiety and though he was "real anxious," he was able to "keep a lid on it." (Tr. 22). In short, the Commissioner contends that plaintiff's progress notes reflect that he experienced stress, depression and anxiety while undergoing a lengthy divorce. Despite these pressures, the Commissioner argues that plaintiff's bipolar symptoms

7

Report and Recommendation
Cross-Motions for Summary Judgment
*Karwat v. Comm'r*; Case No. 11-12452

were effectively managed by medication, and plaintiff did not require any hospitalizations, as Dr. Newhouse observed.  (Tr. 221).

Plaintiff asserts that "Dr. Newhouse's opinions, are both conclusory and predictable given the overwhelming number of similar 'non-disabled' opinions proffered by Dr. Newhouse over the years, many of which were later overruled by administrative law judges who nonetheless awarded benefits."  (Pl. Br. 13).  However, the Commissioner points out that Dr. Nagarkar's and therapist Mersy's opinion can also be described as conclusory, and Dr. Newhouse has extensive experience in applying the regulatory criteria of the disability program, whereas Dr. Nagarkar does not.  The Commissioner argues that other ALJs may have disagreed with Dr. Newhouse after considering a claimant's testimony does not mean that the ALJ in this case erred in relying on Dr. Newhouse's opinion.  The Commissioner also points out that Dr. Nagarkar's progress notes discuss plaintiff's divorce related issues in detail, but are essentially silent as plaintiff's ability to function in a work setting.  Because Dr. Nagarkar never explained his conclusions, or cited any facts to support those conclusions, the Commissioner asserts that the ALJ appropriately preferred Dr. Newhouse's opinion, particularly because Dr. Newhouse reviewed Dr. Nagarkar's progress notes and plaintiff's statements about his symptoms.  (Tr. 220-21).  The Commissioner also points out that "state agency medical and psychological consultants ... are highly qualified physicians and

psychologists ... who are also experts in Social Security disability evaluation." 20 C.F.R. § 404.1527(f).  Dr. Newhouse is an expert in Social Security disability evaluation, and he reviewed Dr. Nagarkar's progress notes.

Although a treating physician's opinion is generally entitled to great weight, such opinions may be discounted if good reasons are provided.  The ALJ explicitly considered Dr. Nagarkar's opinions, but did not give them significant weight because they are not supported by his  progress notes.  Additionally, the Commissioner contends that the opinions are inconsistent with the overall evidence of record.  (Tr. 21).  Under the regulations, there are several factors that the ALJ may consider when determining what weight to give the opinion of the treating physician.  According to the Commissioner, Dr. Nagarkar' opinion does not meet the supportability prong of the regulations.

The Commissioner also points out that no psychiatrist in this case stated that plaintiff lacked sufficient ability to concentrate to complete simple tasks.  According to Nagarkar's opinion, plaintiff was "moderately" limited in his ability to deal with the public; and only "mildly" limited in his ability to understand, remember and carry out simple one-or-two step jobs and "mildly" limited in his ability to handle funds.  (Tr. 314, 316).  The Commissioner contends that these portions of Dr. Nagarkar's opinion are consistent with the ALJ's conclusions concerning plaintiff's ability to work.  And, Dr. Nagarkar did not complete the

portions of the form requesting that he identify how long these limitations had existed and he provided no narrative explanation for his conclusions. Thus, the ALJ was entitled to weigh plaintiff's statements at the hearing against the statements in plaintiff's progress notes and find them less than completely credible.

Plaintiff also claims that the ALJ should have accepted the vocational expert's testimony that if the worker would not be able to maintain concentration or persistence and maintain a regular schedule for at least 20 percent of the day, no jobs would be available, given plaintiff's testimony about side-effects from his medications. (Tr. 57). However, the Commissioner points out that close examination of the progress notes contradicts plaintiff's testimony about side-effects. In October 2008, plaintiff reported no side-effects from his medications and his mental status examination was within normal limits. (Tr. 314). While plaintiff may have had side effects while his levels of medication were adjusted, the record does not support plaintiff's claim of significant and ongoing side effects from medication. (Tr. 314). Presumably, if plaintiff were experiencing significant side effects, he would have reported them to Dr. Nagarkar, but he did not. Although plaintiff's complains that the ALJ did not explain why she discounted plaintiff's "bizarre behavior, his inability to get along with others, his inability to control his temper, his inability to sustain concentration, attention, and effort, his multiple failed attempts to resurrect his business," (Pl. Br. 18), the

ALJ limited plaintiff to "only occasional contact with supervisors and co-workers, and no contact with the public, and to unskilled work only." (Tr. 32, 54).

While plaintiff may exhibit odd behavior, according to the Commissioner, the issue is not whether he is capable of resurrecting his business, but whether he is capable of simple unskilled work not involving interaction with others. In his September 2009 progress notes, Dr. Nagarkar wrote that plaintiff was "focusing a lot better." (Tr. 304). There was apparently some discussion about plaintiff's ability to work during this visit, because Dr. Nagarkar wrote in his notes that plaintiff was "NOT disabled," and was attending a men's Bible study class. (Tr. 304, capitalization in original) (Tr. 21-22). Thus, the ALJ cited legitimate reasons for finding plaintiff's testimony about his symptoms less than fully credible.

The Commissioner contends that the plaintiff's objections to the ALJ's listing analysis are without merit. Here, the ALJ adopted the Listing evaluation offered by Dr. Newhouse, but according to the Commissioner, the ALJ also independently evaluated the record and found that the requirements of Listing 12.04 were not met. (Tr. 21-22). Dr. Newhouse agreed with Dr. Nagarkar that plaintiff was "moderately" limited in the "ability to interact appropriately with the general public" but disagreed with Dr. Nagarkar in the other areas denoted by x-marks, finding plaintiff "moderately," rather than "markedly" limited in the ability "to accept instructions and respond appropriately to criticism from

supervisors" and in the "ability to complete a normal workday and workweek without interruptions from psychologically based symptoms." (Tr. 220). Therefore, the Commissioner maintains that the ALJ's Listing finding was supported by substantial evidence.

The Commissioner also argues that plaintiff has failed to meet the requirements of sentence six because the evidence submitted is not new or material. In addition, the Commissioner contends that plaintiff has not shown good cause as to why such evidence could not have been submitted earlier.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

Report and Recommendation
Cross-Motions for Summary Judgment
*Karwat v. Comm'r*; Case No. 11-12452

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

B. <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

      C.      <u>Analysis and Conclusion</u>

In weighing the opinions and medical evidence, the ALJ must consider

relevant factors such as the length, nature and extent of the treating relationship,

the frequency of examination, the medical specialty of the treating physician, the

opinion's evidentiary support, and its consistency with the record as a whole.  20

C.F.R. § 404.1527(d)(2)-(6).  Therefore, a medical opinion of an examining source

is entitled to more weight than a non-examining source and a treating physician's

opinion is entitled to more weight than a consultative physician who only

examined the claimant one time.  20 C.F.R. § 404.1527(d)(1)-(2).  A decision

denying benefits "must contain specific reasons for the weight given to the treating

source's medical opinion, supported by the evidence in the case record, and must

be sufficiently specific to make clear to any subsequent reviewers the weight the

adjudicator gave to the treating source's opinion and the reasons for that weight."

Soc.Sec.R. 96-2p, 1996 WL 374188, *5 (1996).  The opinion of a treating

physician should be given controlling weight if it is "well-supported by medically

acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent

with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544;

20 C.F.R. § 404.1527(d)(2).  A physician qualifies as a treating source if the

claimant sees her "with a frequency consistent with accepted medical practice for

the type of treatment and/or evaluation required for [the] medical condition."  20

C.F.R. § 404.1502.  "Although the ALJ is not bound by a treating physician's

opinion, 'he must set forth the reasons for rejecting the opinion in his decision.'"

*Dent v. Astrue*, 2008 WL 822078, *16 (W.D. Tenn. 2008) (citation omitted).

"Claimants are entitled to receive good reasons for the weight accorded their

treating sources independent of their substantive right to receive disability

benefits."  *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007).  "The

opinion of a non-examining physician, on the other hand, 'is entitled to little

weight if it is contrary to the opinion of the claimant's treating physician.'"  *Adams*

*v. Massanari*, 55 Fed.Appx. 279, 284 (6th Cir. 2003).  Courts have remanded the

Commissioner's decisions when they have failed to articulate "good reasons" for

not crediting the opinion of a treating source, as § 1527(d)(2) requires.  *Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2000), citing, *Halloran v.*

*Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) ("We do not hesitate to remand when the

Commissioner has not provided 'good reasons' for the weight given to a treating

physician's opinion and we will continue remanding when we encounter opinions

from ALJ's that do not comprehensively set forth the reasons for the weight

assigned to a treating physician's opinion.").

The ALJ's analysis of plaintiff's long-time treating psychiatrist's opinions is as follows:

> As for the opinion evidence, I give little weight to the checkmark list provided by Dr. Nagarkar from April 2009 and December 2009. His opinion (that the claimant's alcohol use had nothing to do with his limitations, and that the claimant is markedly limited in most functional areas) is not supported by the medical evidence of record. See Exhibit 13F, l6F, l7F. In fact, notes from Dr. Nagarkar state "NOT disabled" in September 2009. See Exhibit lSF/3. I give great weigh [sic] to the opinion of the consultative examiner Dr. Newhouse who found that the claimant has only mild to moderate limitations in his functional areas as I feel the medical evidence of record supports his findings. See Exhibit 7F, 8F.

This analysis is perfunctory at best. Dr. Nagarkar offered three consistent opinions of plaintiff's mental impairments during his treatment of plaintiff on the form provided by the SSA. (Dkt. 9-15, Pg ID 621; Dkt. 9-7, Pg ID 314, 316). Two evaluations are from 2009 and one is undated. *Id.* The ALJ's opinion that plaintiff's functional limitations as described by Dr. Nagarkar should be, for the most part, disregarded because he found that his past alcohol abuse did not contribute to the plaintiff's limitations is not sufficiently explained. Moreover, the undersigned is not persuaded that Dr. Nagarkar's note that plaintiff was "not disabled or groggy" on September 24, 2009 is sufficient to undermine the opinions

of this long-term treating specialist in psychiatry. Notably, had Dr. Nagarkar opined that plaintiff "was disabled," the ALJ surely would have concluded that such an opinion was entitled to no weight under the regulations. The undersigned is perplexed as to why a single note of the same ilk was given such great weight in this case.

Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Nagakar's opinion was not entitled to controlling weight, it was still entitled to deference. 20 C.F.R. § 404.1527(d)(2)(i). As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted,

even if it does not meet the test for controlling weight. The ALJ failed to adequately address why Dr. Nagakar's opinions should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). Thus, the undersigned concludes that a remand is necessary so the ALJ may re-evaluate the treating physician opinion and all supporting treatment evidence.

In addition, the ALJ should not have been so quick to give substantial weight to Dr. Newhouse's opinion without considering the fact that Dr. Newhouse only reviewed plaintiff's records through the end of 2007. Thus, by the time of the hearing, a full two years had passed where plaintiff's mental impairments were extensively treated and documented. Dr. Newhouse's opinion, by the time of hearing, was simply outdated. Thus, given the ALJ's rejection of Dr. Nagakar's opinion, we are left with the circumstance of the ALJ interpreting raw medical data without the benefit of an expert medical opinion.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed.Appx. 181, 194 (6th Cir. 2009), quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence."

*Id.* (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec.*, 2011 WL 549861, at *7 (S.D. Ohio 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her own independent medical findings."); *Mason v. Comm'r of Soc. Sec.*, 2008 WL 1733181, at *13 (S.D. Ohio 2008) ("[t]he ALJ must not substitute his own judgment for a doctor's conclusion without relying on other medical evidence or authority in the record."). In other words, "[w]hile an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his [or her] own lay 'medical' opinion for that of a treating or examining doctor." *Beck v. Comm'r of Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio 2011).

The ALJ also reserves the right to decide certain issues, such as a claimant's RFC. 20 C.F.R. § 404.1527(d). Nevertheless, courts have stressed the importance of medical opinions to support a claimant's RFC, and cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data. *See Isaacs v. Astrue*, 2009 WL 3672060, at *10 (S.D. Ohio 2009) ("The residual functional capacity opinions of treating physicians, consultative physicians, and medical experts who testify at hearings are crucial to determining a claimant's RFC because '[i]n making the residual functional capacity finding, the ALJ may not interpret raw medical data in functional terms.'"), quoting *Deskin v. Comm'r of*

*Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008); *see also Nguyen v. Chater*,

172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply

not qualified to interpret raw medical data in functional terms and no medical

opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d

31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory

reports, the ALJ impermissibly substituted his own judgment for that of a

physician; an ALJ is not free to set his own expertise against that of a physician

who presents competent evidence.").  As the *Deskin* court explained:

> An ALJ is not qualified to assess a claimant's RFC on the
> basis of bare medical findings, and as a result an ALJ's
> determination of RFC without a medical advisor's
> assessment is not supported by substantial evidence.
> Where the "medical findings in the record merely
> diagnose [the] claimant's exertional impairments and do
> not relate these diagnoses to specific residual functional
> capabilities such as those set out in 20 C.F.R.
> § 404.1567(a) ... [the Commissioner may not] make the
> connection himself."

*Deskin*, 605 F.Supp.2d at 912, quoting *Rohrgerg v. Apfel*, 26 F.Supp.2d 303, 311

(D. Mass. 1998) (internal citation omitted)[2]; *see also Mitsoff v. Comm'r of Soc.*

*Sec.*, 2013 WL 1098188, *8 (S.D. Ohio 2013) (collecting cases).

---

[2] "Properly understood, *Deskin* sets out a narrow rule that does not constitute a
bright-line test." *Kizys v. Comm'r of Soc. Sec.*, 2011 WL 5024866 at *2 (N.D. Ohio 2011).
Rather, *Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC
determination based on no medical source opinion; or (2) where an ALJ made an RFC
determination based on an outdated source opinion that did not include consideration of a critical
body of objective medical evidence. *Id.*  In this case, there is a significant body of medical
evidence that was submitted after Dr. Newhouse's opinion was issued in February, 2008.

Report and Recommendation
Cross-Motions for Summary Judgment
*Karwat v. Comm'r*; Case No. 11-12452

There are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *Mitsoff*, 2013 WL 1098188, *9, citing *Deskin*, 605 F.Supp.2d at 912 ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment"). This does not appear to be such a case, particularly where the plaintiff was suffering from a complex diagnosis such as interstitial cystitis, as acknowledged by the Commissioner in SSR 02-2p, in combination with other severe impairments. Under these circumstances, an expert medical advisor is absolutely critical to properly evaluating plaintiff's impairments, symptoms, and functional limitations. Thus, the undersigned concludes that this matter should be remanded so that the ALJ can obtain the opinion of an expert medical advisor on plaintiff's mental residual functional capacity, which should include a complete review of plaintiff's mental health records through the last date insured.

Given that the treating physician's opinion will have to be re-assessed and the opinion of an additional medical advisor obtained, plaintiff's credibility will necessarily have to be re-assessed on remand. In addition, given that this matter will be remanded under sentence four, plaintiff's request for remand under

Report and Recommendation
Cross-Motions for Summary Judgment
*Karwat v. Comm'r*; Case No. 11-12452

sentence six need not be considered.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED**, that the Commissioner's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED**, and that this matter be **REMANDED** for further proceedings under sentence four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: August 16, 2013                         s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 16, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: John I. Tsiros, Andrew J. Lievense, AUSA, Jason Scoggins and the Commissioner of Social Security.

                                              s/Tammy Hallwood
                                              Case Manager
                                              (810) 341-7887
                                              tammy_hallwood@mied.uscourts.gov

Report and Recommendation
Cross-Motions for Summary Judgment
*Karwat v. Comm'r*; Case No. 11-12452